# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

BART SWEENEY & KATHLEEN )
SWEENEY, his wife )
)
       Plaintiffs, )    2:09-cv-00266 JWS
)
  vs. )    **ORDER AND OPINION**
)
)    **[Motions at Docket 18, 19, 20, 21, 23]**
PAUL DARRICARRERE & LLZE )
DARRICARRERE his wife; RAYMUND )
SCHWARTZ & LYNNE SCHWARTZ )
his wife; ABE FRISHMAN & DEBBIE )
FRISHMAN his wife; WORLD BOTTLE )
CAP HOLDINGS INC; MOSTER & )
WYNNE, P.C., )
)
      Defendants. )
_____ )

## I.  MOTIONS PRESENTED

    Defendants Paul and Llze Darricarrere ("Darricarreres"), Raymund and Lynne

Schwartz ("Schwartzes"), Abe and Debbie Frishman ("Frishmans"), World Bottling Cap

Holdings, Inc. ("WBCH"), and Moster & Wynne ("M&W") move to dismiss plaintiffs Bart

and Kathleen Sweeneys' ("Sweeneys") complaint on various grounds.

    At docket 18, the Darricarreres, Schwartzes, and WBCH move for an order

dismissing in their entirety claims two and five pursuant to Federal Rules of Civil

Procedure 9(b) and 12(b)(6).  At docket 24, the Sweeneys oppose the motion.  At docket 29, the Darricarreres, Schwartzes, and WBCH reply.

At docket 19, the Darricarreres, Schwartzes, and WBCH move for an order dismissing claims three, four, five, six, and seven pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that such claims are time-barred.  At docket 22, M&W joins the motion.  At docket 26, the Sweeneys oppose the motion. At docket 30, the Darricarreres, Schwartzes, and WBCH reply.  At docket 28, M&W replies in support of its joinder.  At docket 38, the Darricarreres, Schwartzes, and WBCH join in the M&W reply.

At docket 20, the Darricarreres and the Schwartzes move for an order dismissing all claims pursuant to Federal Rule of Civil Procedure 12(b)(2).  At docket 31, the Sweeneys oppose the motion.  At docket 34, the Darricarreres and the Schwartzes reply.

At docket 21, the Frishmans move for an order dismissing all claims pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), 12(b)(2), and 12(b)(5).  At docket 33, the Sweeneys oppose the motion.  At docket 37, the Frishmans reply.  At docket 38, the Darricarreres, Schwartzes, and WBCH join in the motion and reply.

At docket 23, M&W moves for an order dismissing in their entirety claims two and five pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  At docket 25, the Sweeneys oppose the motion.  At docket 27, M&W replies.  At docket 38, the Darricarreres, Schwartzes, and WBCH join in the motion and reply.

Oral argument was heard on July 1, 2009.

## II.  BACKGROUND

**A. Factual Background**

In October 2005, the Frishmans contacted Bart Sweeney concerning a product in development by a new company, WBCH, with which the Frishmans were affiliated.[1] From December 2005 to May 2006, the Frishmans provided Sweeney with information and promotional items concerning WBCH's new product ("the Product"), and indicated that Sweeney would be receiving a Private Placement Memorandum regarding investing in WBCH.[2] The Product is the Easy Pull™ Bottle Cap, a pull-ring technology designed as a replacement for current bottle caps on glass and aluminum bottles.[3] Throughout this period, the Frishmans indicated that bottling companies were testing the Product and, if they chose to adopt it, would purchase billions of the Product.[4] The Frishmans indicated that the Darricarreres, Schwartzes, and Frishmans were dedicated to the success and profitability of WBCH.[5] The Darricarreres, Schwartzes, and Frishmans are all officers and shareholders of WBCH, each of whom own a 33.33% share of common stock.[6]

In June 2006, Abe Frishman invited the Sweeneys to invest in WBCH, and visited Arizona to discuss the specifics of investing and provide details on the financial

---

[1]Docket 1 ¶¶ 12, 13.

[2]*Id.* ¶¶ 14, 15.

[3]Docket 17, Exhibit 1 at 1.

[4]Docket 1 ¶ 16.

[5]*Id.* ¶ 19.

[6]*Id.* ¶¶ 3, 5, 7, 17.  Docket 17, Exhibit 2 at 29, 30.

needs of WBCH.[7]  Frishman brought samples of the Product and demonstrated its use

to the Sweeneys.[8]  On June 10, 2006, the Frishmans informed Bart Sweeney through

email that for each additional investor he recruited, he would receive $5000.00 in cash

or stock.[9]  This offer included recruitment of his wife Kathleen, whom he did recruit.[10]

The Sweeneys allege that Bart has not received any compensation for recruiting his

wife.[11]

On July 29, 2006, the Sweeneys received the Subscription Agreement via

facsimile while in Minneapolis, Minnesota, which they signed and returned.[12]  On August

5, 2006, the Sweeneys mailed two checks, one from Bart, one from Kathleen, to the

Frishmans in the amount of $100,000.00 each, payable to WBCH.[13]  On August 7,

2006, Bart Sweeney received an email from the Frishmans confirming receipt of the

checks.[14]  From this date through fall of 2007, the Frishmans and the Sweeneys had

---

[7]Docket 1 ¶¶ 20-25.  The Darricarreres, Schwartzes, and Frishmans are residents of California, Massachusetts, and Texas, respectively.  *See id.* ¶¶ 1, 2, 4, 6.  The Sweeneys are residents of Arizona.  *See id.* ¶ 1.

[8]*Id.* ¶¶ 21, 22.

[9]*Id.* ¶ 26.

[10]*Id.* ¶¶ 27, 33.

[11]*Id.* ¶ 28.

[12]*Id.* ¶¶ 30, 31.  The Subscription Agreement is at docket 17, Exhibit 1.

[13]*Id.* ¶ 33.

[14]*Id.* ¶ 34.

numerous discussions regarding WBCH, ongoing Product testing, and potential customers.[15]

On January 30, 2007, the Sweeneys received a document packet, enclosed with a cover letter from M&W, which contained a new Private Placement Memorandum and a revised version of the Subscription Agreement.[16]  The revised agreement contained material changes from the original agreement.[17]  The Sweeneys were not advised of their right to rescind the original transaction and their two payments of $100,000 have not been returned.[18]  The Complaint does not indicate whether the Sweeneys inquired about a right to rescind, or whether they asked for the return of their investment money.

Beginning mid-year 2007, the Sweeneys began to inquire as to why there were no sales results for WBCH, why there was a decrease in marketing activity, and why the Darricarreres, Schwartzes, and Frishmans had decreased their activities on behalf of WBCH.[19]  In December 2007, the Sweeneys wrote to Raymund Schwartz, requesting contact information for WBCH's officers and requesting an explanation as to why they had not received any correspondence from WBCH since the date of their investment.[20]

---

[15]*Id.* ¶ 35.

[16]*Id.* ¶ 37.  It is not clear from the Complaint whether the Sweeneys signed the revised agreement.  However, subsequent behavior of the parties suggests that they did.

[17]*Id.* ¶ 38.  The Revised Subscription Agreement is at docket 17, Exhibit 2.

[18]*Id.* ¶¶ 39, 40.

[19]*Id.* ¶ 36.  The Complaint is not clear with whom the Sweeneys inquired.

[20]*Id.* ¶¶ 41, 42.  A series of letters from the defendant officers of WBCH, dated December 16, 2007 through August 13, 2008, is collected at docket 31, Exhibit 1.  All of the letters are in response to communications from the Sweeneys.  The court has not seen any of the Sweeneys' communications.

On January 23, 2008, the shareholders in WBCH, including the Sweeneys, received financial, sales, and marketing information for WBCH for the years 2006 through 2007.[21]

**B. Procedural Background**

The Sweeneys filed their complaint on February 10, 2009. Claim one requests equitable accounting and appointment of a receiver; claim two alleges fraud and misrepresentation; claim three alleges breach of fiduciary duty; claim four alleges conversion; claim five alleges negligent misrepresentation; claims six and seven allege violation of federal and Arizona securities laws, respectively.

All defendants move to dismiss claims three, four, and five as time-barred by the two-year statute of limitation contained in A.R.S. § 12-542 . The Sweeneys respond that claims three and five are subject to a four-year statute of limitation, based on A.R.S. § 12-550. The Sweeneys concede that A.R.S. § 12-542 governs claim four, but argue that the statute is tolled due to allegedly fraudulent behavior by the defendants. The defendants argue that the statute began to run on these claims no later than January 30, 2007, the date the Sweeneys received the revised Subscription Agreement. The Sweeneys counter that the limitation period did not begin to run until mid-year 2007, when they began to inquire about WBCH's sales and marketing.

All defendants move to dismiss claim six as time-barred by a one-year statute of limitation, based on 15 U.S.C. § 77m, arguing that the statute began to run on August 5, 2006, the date that the Sweeneys mailed their investment checks to the Frishmans.

---

[21] *Id.* ¶ 43.

The Sweeneys do not respond to this argument.  The defendants argue that the Sweeneys' silence operates as a waiver of claim six.

All defendants move to dismiss claim seven as time-barred by a one-year statute of limitation, based upon A.R.S. § 44-2004(A), arguing that the statute began to run on August 5, 2006, the date that the Sweeneys mailed their investment checks to the Frishmans. The Sweeneys respond that claim seven is subject to the four-year statute of limitation contained in A.R.S. § 12-550.

The Sweeneys also argue that if any claim should be time-barred, the statute of limitation should be tolled, due to the Sweeneys' lack of knowledge of their causes of action.  The defendants counter that the Complaint fails to allege sufficient facts to justify equitable tolling.

The Darricarreres, Schwartzes, and Frishmans move to dismiss all claims, citing a lack of personal jurisdiction, based both upon their lack of minimum contacts with Arizona and their roles as corporate officers engaged in official conduct. The Sweeneys respond that 15 U.S.C. § 78aa, which confers nationwide service of process, permits any U.S. court to assert personal jurisdiction on the basis of contacts with the United States as a whole, rather than with Arizona.  Furthermore, the Sweeneys argue that the court may exercise subject-matter jurisdiction over claim six, which would permit the court to exercise pendant jurisdiction over the remaining claims. The Sweeneys further argue that personal jurisdiction exists for all claims pursuant to Arizona's long-arm statute, Arizona Rule of Civil Procedure 4.2(a).  Additionally, the Sweeneys argue that personal jurisdiction exists despite the defendants' roles as corporate officers.

All defendants move to dismiss claims two and five in their entirety for failure to state a claim with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b). The Sweeneys respond that their claims have been made with the requisite particularity, noting that the Complaint provides all details known to them regarding the actions and statements of the various defendants.[22] The Sweeneys also argue that due to the defendants' alleged withholding of information and concealment of facts, as the Sweeneys detail in claim one, they lack sufficient knowledge to plead with a greater degree of specificity.

Finally, the Frishmans, Darricarrerres, Schwartzes, and WBCH move to dismiss all claims for insufficient service of process, on the ground that the Sweeneys did not serve copies of the exhibits referenced in the Complaint.[23] They further state that, upon discovery of the mistake, the Sweeneys filed the exhibits with the court, but did not serve them on the defendants. The Sweeneys respond that filing the exhibits with the court satisfies service of process requirements, based upon Federal Rule of Civil Procedure 1.

## III. STANDARDS OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure12(b)(5) for insufficient service of process is governed by the procedural requirements of Federal Rule of Civil Procedure Rule 4(c).[24] Rule 4(c) states, in relevant part, that "a summons must be

---

[22]Docket 24 at 3, citing docket 1 ¶¶ 12 - 46.

[23]Exhibits 1 and 2 are referenced at docket 1 ¶¶ 30 and 38.

[24]Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d §1353 at 333 (hereafter "Wright & Miller").

served with a copy of the complaint."[25]  "Rule 4 is a flexible rule that should be liberally

construed so long as a party receives sufficient notice of the complaint."[26]  Indeed, "the

purpose of service is to give the defendant notice of the institution of the proceedings."[27]

In determining whether service was valid, whether actual notice was given is "highly

probative."[28]

A motion to dismiss for failure to state a claim made pursuant to Federal Rule of

Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.[29]  In

reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact in the

complaint are taken as true and construed in the light most favorable to the nonmoving

party."[30]  "Conclusory allegations of law, however, are insufficient to defeat a motion to

dismiss."[31]  A dismissal for failure to state a claim can be based on either "the lack of a

cognizable legal theory or the absence of sufficient facts alleged under a cognizable

legal theory."[32]  "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain

detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief

---

[25]Fed. R. Civ. P. 4(c)(1).

[26]*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)).

[27]Wright & Miller §1094 at 511.

[28]*Homer v. Jones-Bey*, 415 F.3d 748, 758 (7th Cir. 2005).

[29]*De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

[30]*Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997).

[31]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[32]*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

that is plausible on its face.'"[33]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34]  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[35]

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction [pursuant to Federal Rule of Civil Procedure 12(b)(2)], the plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant."[36]  Where the motion is based only upon written materials, rather than an evidentiary hearing, the plaintiff is required only to make a *prima facie* showing of personal jurisdiction.[37] Uncontroverted allegations in the complaint are taken as true, and conflicts between parties over statements contained in affidavits are resolved in favor of the plaintiff.[38]

---

[33] *Weber v. Dept. of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[34] *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009).

[35] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[36] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

[37] *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

[38] *Id.*

# IV.  DISCUSSION

## A. Improper Service of Process

The Frishmans, Darricarreres, Schwartzes, and WBCH[39] argue that the Sweeneys' failure to provide copies of Exhibits 1 and 2 with the Complaint, and their failure to amend the Complaint to include the missing exhibits, rendered service of their complaint insufficient under Federal Rule of Civil Procedure 4(c).[40]  The Sweeneys respond that filing the exhibits with the court satisfies the requirements of Rule 4(c).[41] As noted above, Rule 4(c) states, in relevant part, that "a summons must by served with a copy of the complaint."[42]  "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."[43]  Indeed, "the purpose of service is to give the defendant notice of the institution of the proceedings."[44]  In determining whether service was valid, whether or not actual notice was given is "highly probative."[45]

---

[39]For the purposes of this subsection A, the court refers to the Frishmans, Darricarreres, Schwartzes, and WBCH collectively as "defendants."

[40]Docket 21 at 9, 10.

[41]Docket 33 at 16.  The exhibits were filed at docket 17 on April 8, 2009.

[42]Fed. R. Civ. P. 4(c)(1).

[43]*Direct Mail Specialists,* 840 F.2d at 688 (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)).

[44]Wright & Miller §1094 at 511.

[45]*Homer*, 415 F.3d at 758.

The exhibits in question consist of copies of the original and revised Subscription Agreements.[46]   It is not disputed that the defendants, or agents thereof, created both Subscription Agreements for the express purpose of signing investors to WBCH.[47]   It is also not disputed that the original Subscription Agreement was provided by and returned to the Frishmans.[48]   Therefore, it is reasonable to conclude that the defendants were, at one time, in possession of the Subscription Agreements. Furthermore, the defendants state that the exhibits were filed in the Court's electronic filing system,[49] from which the defendants may retrieve them at any time.   Because the purpose of Rule 4 is to ensure that defendants have adequate notice of all claims, common sense would suggest that possessing a full copy of the Complaint satisfies this requirement, regardless of the source from which the defendants obtained any attached exhibits. This is particularly true where defendants drafted the exhibits in question.   The court concludes that the requirements of Rule 4(c) have been satisfied.   The motion to dismiss based upon Rule 12(b)(5) is denied.

### B. Statutes of Limitation

All defendants move to dismiss claims three, four, five, six, and seven as time-barred pursuant to Federal Rule of Civil Procedure 12(b)(6).   The parties disagree as to which statutes of limitation apply to most claims, the dates of accrual for all claims, and whether or not the doctrine of equitable tolling is applicable.   "The affirmative defense of

---

[46]Docket 1 ¶¶ 30, 38.

[47]*Id.* ¶¶ 30, 31, 33, 37, 38.

[48]*Id.* ¶¶ 30, 31.

[49]Docket 21 at 10.

statute of limitations is properly raised in a motion to dismiss where it appears from the face of the complaint that the claim is barred."[50]  Once the defendant establishes a *prima facie* case that the statute applies, "the burden of going forward shifts to the plaintiff to show its claims fall within a recognized exception to the statute."[51]  The court will first address the issues of accrual dates and applicable statutes for claims six and seven, followed by claims three and five, and finally claim four.

**1. Claims Six and Seven**

Counsel for the Sweeneys conceded in oral argument that the statutes of limitation have run for claims six and seven.  The court will therefore grant defendants' motion to dismiss claims six and seven as time-barred.

**2. Claims Three and Five**

The parties disagree as to which statute applies to claims three and five.  The Sweeneys argue that a four-year period applies, pursuant to § 12-550, while defendants argue that a two-year period applies, pursuant to § 12-542.  Arizona law clearly states that both breach of fiduciary duty and negligent misrepresentation are governed by § 12-542, and are thus subject to a two-year limitation period.[52]  The parties also disagree as to the dates of accrual for these two claims.  The Sweeneys argue that the earliest possible date of accrual is "mid year 2007," when they began to inquire about the status of their investment funds.[53]  All defendants argue that the material changes between the

---

[50]*Anson v. American Motor Corp.*, 155 Ariz. 420, 421 (Ct. App. 1987).

[51]*Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 139 (Ct. App. 1996).

[52]*CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A.,* 198 Ariz. 173, 175 (Ct. App. 2000).

[53]Docket 26 at 3.

original Subscription Agreement and the revised Subscription Agreement, which the Sweeneys received on January 30, 2007, put the Sweeneys on sufficient notice to begin to run the statute of limitation for their state law tort claims.[54]  Given that the Sweeneys filed their Complaint very near the two-year mark, the accrual date is critical in determining whether the claims are time-barred.

Causes of action for breach of fiduciary duty and negligent misrepresentation accrue "when the plaintiff knows, or in the exercise of reasonable diligence should have known, of the defendant's negligent conduct."[55]  However, it is normally left to the trier of fact to determine a claim's accrual date, because it is an "inquiry centering on the plaintiff's knowledge of the subject event and resultant injuries, whom the plaintiff believed was responsible, and the plaintiff's diligence in pursuing the claim."[56]  Here, determining what the Sweeneys knew or should have known, and when, is a vital factual issue necessary to deciding whether the statute of limitation has run.  The Complaint indicates only that Bart Sweeney engaged in phone conversations with the Frishmans from August 2006 through the fall of 2007, but is silent as to what the Sweeneys may have known during that time.[57]  The record contains no print communications from the Sweeneys at all, and the first print communication in the record that postdates the revised Subscription Agreement is a facsimile from Raymund

---

[54]Docket 30 at 4 - 5.

[55]*Sato v. van Denburgh*, 123 Ariz. 225, 227 (1979).  *See also CDT*, 198 Ariz. at 175; *Nielson v. Arizona Title Ins. Trust Co.*, 15 Ariz. App. 29, 30 (1971).

[56]*Logerquist v. Danforth*, 188 Ariz. 16, 22 (App. 1996).  *See also Kiley*, 187 Ariz. at 139.

[57]Docket 1 ¶ 35.

Schwartz dated December 16, 2007.[58]  This leaves a gap of approximately eleven months, during which period the record lacks any evidence from which the court could determine what the Sweeneys may have known.  Because of this gap, the court cannot conclude what the Sweeneys knew or should have known during this period.  Therefore, the court declines to rule on the matter of the accrual dates for claims three and five at this time.[59]

## 3. Claim Four

For claims of conversion, "the cause of action 'accrues' at the time of the wrongful taking and not at the time of the discovery."[60]  Conversion is governed by § 12-542, which specifies a two-year limitation period.[61]  Because the date of the allegedly wrongful taking is August 5, 2006, more than two years before the filing date, the statute has run.  The Sweeneys argue that the running of the statute of limitation is tolled by reason of fraudulent concealment of the taking.  In order to toll the statute of limitation, a defendant's "conduct must be directed to obtaining the delay of which he actively seeks

---

[58]At oral argument, the defendants pointed out that the revised Subscription Agreement on record is not signed, and suggested that the Sweeneys did not sign it because they may have known by this time that a cause of action existed.  *See* docket 17, Exhibit 2 at 41. However, the court cannot reasonably reach any conclusions based on this assertion alone, particularly in light of the fact that the original Subscription Agreement on record also lacks a signature, yet it is not disputed that it was signed and returned to the Frishmans.  *See* docket 17, Exhibit 1 at 6; docket 1 ¶ 31.

[59]The court has considered the Sweeneys' argument for equitable tolling.  However, given that the court is unable to determine the accrual dates for claims three and five, the court declines to address the issue of equitable tolling as to claims three and five at this time.

[60]*Jackson v. American Credit Bureau, Inc.*, 23 Ariz. App. 199, 201 (1975).

[61]*Id.*

to take advantage by pleading the statute."[62]  "There must be some positive act of concealment done to prevent detection."[63]  The Sweeneys' spare Complaint precludes resolution of the issue of equitable tolling as to conversion at the pre-discovery stage. The record does not contain any evidence that would illuminate the actions, knowledge, and intent of the defendants with respect to allegedly preventing the Sweeneys from discovering the basis of their conversion claim.  Therefore, the Court declines to rule on the matter of equitable tolling at this time.  Because the court declines to rule on the matter of equitable tolling as to claim four, the defendants' motion to dismiss claim four as time-barred is denied.

## C. Personal Jurisdiction

The next issue is whether all claims against the Darricarreres, the Schwartzes, and the Frishmans should be dismissed for lack of personal jurisdiction.[64]  The defendants argue that they lack sufficient contacts with Arizona to be subject to personal jurisdiction.  The Sweeneys argue that personal jurisdiction is appropriate due to both pendant jurisdiction arising from the sixth claim, and through Arizona's long-arm statute.  Neither WBCH nor M&W have moved to dismiss for lack of personal jurisdiction.  The court concludes that they consent to personal jurisdiction.[65]

---

[62]*Id.* at 202.

[63]*Id.*

[64]For the purposes of subsection C, the Darricarreres, Schwartzes, and Frishmans shall be known collectively as "defendants."

[65]Fed. R. Civ. P. 12(h)(1).

First, the Sweeneys argue that 15 U.S.C. § 78aa, which confers nationwide service of process, permits any U.S. court to assert personal jurisdiction on the basis of contacts with the United States as a whole, rather than with Arizona. Because the court has personal jurisdiction over claim six, the Sweeneys continue, the court may exercise ancillary jurisdiction over the remaining claims. However, because claim six has been dismissed, the Sweeneys' argument under § 78aa fails.

Second, the Sweeneys argue that personal jurisdiction is appropriate pursuant to Arizona's long-arm statute.[66] The defendants argue that they lack the requisite "minimum contacts" to allow Arizona to exercise personal jurisdiction. As noted above, "[w]here a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant."[67] Where the motion is based only upon written materials, rather than an evidentiary hearing, the plaintiff is only required to make a *prima facie* showing of personal jurisdiction.[68] Uncontroverted allegations in the complaint are taken as true, and conflicts between parties over statements contained in affidavits are resolved in favor of the plaintiff.[69] In order to establish jurisdiction, the Sweeneys must show that Arizona's long-arm statute provides personal jurisdiction over the out-of-state defendants and that the exercise of jurisdiction does not violate federal constitutional

---

[66]Ariz. R. Civ. P. 4.2(a).

[67]*Schwarzenegger*, 374 F.3d at 800.

[68]*Dole Food Co.*, 303 F.3d at 1108.

[69]*Id.*

principles of due process.[70]  Because Arizona's long-arm statute "confers jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause" of the United States Constitution,[71] the court proceeds under the federal due process framework.

For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."[72]  Depending on the type and extent of defendants' contacts, a plaintiff may assert either general or specific jurisdiction.  Because the Sweeneys do not contend that the court may exercise general jurisdiction, only specific jurisdiction will be considered.  Specific jurisdiction subjects a defendant to suit in the forum state for claims arising from or relating to the defendant's activities within the state.[73]  Whether a court may exercise specific jurisdiction is governed by a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

---

[70] *Schwarzenegger*, 374 F.3d at 800-01.

[71] *Williams v. Lakeview Co.*, 199 Ariz. 1, 3 (2000); Ariz. R. Civ. P. 4.2(a).

[72] *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

[73] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.[74]

The Sweeneys bear the burden on the first two prongs; if the Sweeneys establish both prongs one and two, the defendants must present a "compelling case" that the exercise of jurisdiction would not be reasonable.[75]  The reasonableness determination requires the consideration of several specific factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.[76]

## 1. Purposeful Availment or Direction

To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."[77]  The Ninth Circuit often uses the phrase "purposeful availment" to include both purposeful availment and purposeful direction,[78] but availment and direction are, in fact, two distinct concepts.  A

---

[74]*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citing *Schwarzenegger*, 374 F.3d at 802).

[75]*Id.*

[76]*Burger King Corp.*, 471 U.S. 476-77.

[77]*Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1985)).

[78]*See, e.g.*, *Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

purposeful availment analysis is most often used in suits sounding in contract,[79] while a purposeful direction analysis is most often used in suits sounding in tort.[80]  A defendant may be said to have purposefully availed himself of the privilege of doing business in a forum state where there is evidence of the defendant's actions in the forum, such as executing or performing a contract there.[81]  A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere.[82]

Because the Sweeneys' claims sound in tort, the court applies the purposeful direction analysis.  In order to establish whether the defendants purposefully directed their activities to the forum state, the court must apply the "effects" test first enunciated by the Supreme Court in *Calder v. Jones*[83] and recently discussed at length by the Ninth Circuit in *Dole Food Co., Inc. v. Watts*.[84]  The "effects" test states that "purposeful availment is satisfied even by a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state . . . [where] the defendant allegedly (1) committed an intentional act, (2) expressly aimed at the forum

---

[79]*See, e.g.*, *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001).

[80]*See, e.g., Dole Food Co.*, 303 F.3d at 1111; *cf. Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995) (noting that "we apply different purposeful availment tests to contract and tort cases").

[81]*Schwarzenegger*, 374 F.3d at 802-03.

[82]*Id.*

[83]465 U.S. 783 (1984).

[84]303 F.3d at 1111.

state, and (3) caused harm that the defendant knows is likely to be suffered in the forum state."[85]  The court considers each element in turn.

### a. Intentional Act

An intentional act, as it relates to the purposeful direction analysis, refers to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."[86]  The Sweeneys' claims arise from their investment in WBCH.  Acts such as visits or mailings sent to the Sweeneys with the purpose of obtaining or maintaining the investment would constitute intentional acts. Abe Frishman's repeated telephonic and personal contact with the Sweeneys, as well as Paul Darricarerre's and Raymund Schwartz's letters to the Sweeneys, would also constitute intentional acts.

### b. Expressly Aimed

The Sweeneys must also show that the defendants "expressly aimed" their intentional acts at Arizona.  The rule in the Ninth Circuit is "that the requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."[87]  This rule extends to actions "performed for the very purpose of having their consequences felt in the forum state."[88]  For example, in *Bancroft & Masters v. Augusta National, Inc.*, the

---

[85] *Id.* (internal quotation marks and citations omitted).

[86] *Schwarzenegger*, 374 F.3d at 806.

[87] *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

[88] *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257, 1259-60 (9th Cir. 1989).

Ninth Circuit held that merely sending a letter was sufficient to constitute "express aiming" because the letter "individually targeted" a plaintiff in the forum state.[89]  Because the great majority of visits, calls, and letters were necessarily directed towards the Sweeneys while they were in Arizona, the court finds that such communications were expressly aimed at Arizona.

### c. Causing Harm

Although the Sweeneys have not yet established that the defendants' actions caused them harm, it is clear that, if established, the communications constituting intentional acts expressly aimed at the Sweeneys may be found to have caused harm that defendants knew was likely to be felt in Arizona.

## 2. Arising From or Relating To

The second requirement for specific personal jurisdiction is that the contacts constituting purposeful availment or direction must be the contacts giving rise to the current suit.  The Ninth Circuit measures this requirement in terms of "but for" causation.[90]  There is no question that Sweeneys' claims arise out of or relate to the defendants' conduct constituting purposeful direction.  The defendants argue that the actual, damage-causing event must occur in the forum state, alluding to the uncontroverted fact that the Sweeneys signed the original Subscription Agreement while in Minnesota.  However, in *MacPherson v. Taglione*, in which fraud and breach of

---

[89]*Bancroft & Masters, Inc.*, 223 F.3d at 1088.

[90]*See Ziegler*, 64 F.3d at 474.

contract were alleged over the interstate sale of coins, the Arizona Court of Appeals

noted that:

> The mere fact that in this case the coins were purchased by appellant
> while he was on vacation in Michigan does not detract from the fact that
> New England Coin initially contacted the appellant in Arizona and the
> coins would have been purchased by appellant while he was still
> physically in Arizona had he not been on vacation. Indeed, the coins
> were sent to appellant in Arizona.[91]

The same is true here. Even though the Agreement was signed in Minnesota, the

investment checks were mailed when the Sweeneys returned to Arizona. Abe Frishman

originally contacted the Sweeneys in Arizona, and visited them in Arizona to

demonstrate the Product. A majority of the letters from Paul Darricarrere and Raymund

Schwartz to the Sweeneys were sent to Arizona.[92] Therefore, the court concludes that

the claims arise from the defendants' actions in Arizona.

### 3. Fair Play and Substantial Justice

At prong three, the burden is on the defendant to present a compelling case that

the exercise of jurisdiction would, in fact, be unreasonable. As mentioned above, the

reasonableness determination requires the consideration of several specific factors:

(1) the extent of the defendant's purposeful interjection into the forum state, (2) the

burden on the defendant in defending in the forum, (3) the extent of the conflict with the

sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the

dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of

---

[91]158 Ariz. 309, 312 (Ct. App. 1988).

[92]Docket 31, Exhibit 1. The remaining letters do not indicate the delivery address.

the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.[93]  The court considers each factor below.

Extent of Purposeful Injection.  This factor parallels the question of minimum contacts.  As discussed above, the court finds that defendants have purposefully directed their activities to Arizona.  Abe Frishman's purposeful injection, consisting of initially contacting the Sweeneys, traveling to Arizona for the purpose of obtaining the Sweeneys' investment in WBCH, and maintaining continuous contact from October 2005 until at least fall of 2007 is more extensive than that of the Darricarreres and the Schwartzes, whose contacts in the record are their letters to the Sweeneys dated from December 2007 through August 2008.  Despite this small distinction, this factor appears to be in favor of litigating in Arizona as to all defendants.

Burden on Defendants. The Sweeneys, Darricarreres, Schwartzes, and Frishmans live in Arizona, California, Massachusetts, and Texas, respectively.  WBCH is incorporated in Nevada, and M&W is incorporated in Texas.  If the litigation continues in Arizona, defendants will have to litigate outside their respective home states, possibly incurring expenses relating to travel, shipping evidence, and transporting witnesses. Conversely, if litigation were commenced in a single forum outside Arizona, at least three of the individual defendants would still have to litigate outside their home state, and presumably could still incur the expenses above.  At least with respect to this factor, a majority of the defendants would be burdened regardless of where litigation occurs. Therefore, this factor is neutral.

_____

[93]*Burger King Corp.*, 471 U.S. 476-77.

Conflict with Sovereignty of Defendants' State.  There has been no evidence presented that an exercise of jurisdiction by Arizona will conflict with any other state's sovereignty, nor can the court conceive that there would be.  The court concludes that this factor favors Arizona's exercise of personal jurisdiction.

Forum State's Interest. "Arizona has a strong interest in protecting its residents from torts that cause injury within the state, and in providing a forum for relief."[94]  This factor weighs in favor of litigating in Arizona.

Most Efficient Resolution.  This factor is similar to that of the burden on the defendants, above.  The Sweeneys witnesses and evidence are likely located in Arizona, while the defendants' witnesses and evidence are likely to be located in their respective home states.  Regardless of where the proceedings occur, a majority of parties will have to litigate outside their home state, and possibly incur expenses related to travel, movement of evidence, and witness travel.  Therefore, this factor is neutral.

Convenient and Effective Relief for Plaintiff.   Arizona is certainly the more convenient forum for the Sweeneys, although scheduling, travel, and other distance issues could slow the proceedings.  However, as discussed above, since a majority of the defendants will have to litigate outside their home state, these potential delays could occur regardless of the forum.  This factor balances in favor of litigating in Arizona.

Existence of Alternative Forum.  The Sweeneys have the burden of proving the unavailability of an alternative forum, but they have not attempted to do so.[95]  In fact, the

---

[94] *Brainerd*, 873 F.2d at 1260.

[95] *Pacific Atl. Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1330 (9th Cir. 1985).

Sweeneys admit that alternatives do exist in California, Massachusetts, and Texas.[96] Therefore, this factor weighs against litigating in Arizona.

Because a majority of reasonableness factors weigh in favor of litigating this dispute in Arizona, the court concludes that defendants have not provided a compelling case that exercising jurisdiction in Arizona would be unreasonable. Finally, because the court has found that the three requisite elements have been satisfied, the court concludes that the exercise of specific personal jurisdiction is appropriate.

## 4. Corporate or Fiduciary Shield

The defendants also argue that their status as employees of WBCH equitably prevents Arizona from asserting personal jurisdiction on the ground that they are shielded from liability by the corporate form. According to the fiduciary shield doctrine, association with a corporate entity that causes injury in the forum state is not alone sufficient to allow that forum to assert personal jurisdiction over individual defendants associated with the organization.[97] However, the court may disregard the corporate form in certain situations.[98] For example, the shield is ignored "in cases in which the corporation is the agent or alter ego of the individual defendant,"[99] or "where there is an identity of interests between the corporation and the individuals."[100] Additionally,

---

[96]Docket 31 at 8; Docket 33 at 13.

[97]*Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).

[98]*Id.*

[99]*Id.; see also Dietel v. Day*, 16 Ariz. App. 206, 208 (1972).

[100]*Davis*, 885 F.2d at 520*; see also Holfield v. Power Chem. Co.*, 382 F. Supp 388, 393 (D. Md. 1974).

fraudulent activity by individual defendants can "provide a basis for asserting jurisdiction in spite of the corporate shield."[101]  "Although Arizona courts previously recognized a corporate shield limit on their long-arm jurisdiction, Arizona has more recently focused on corporate officers' individual contacts to assert personal jurisdiction, rather than restricting their jurisdiction to cover the corporate entity only."[102]  While Arizona's long-arm statute allows "assertion of personal jurisdiction over officers of a corporation as long as the court finds those officers to have sufficient minimum contacts with Arizona,"[103] in an abundance of caution the court will also consider whether the Darricarreres , Schwartzes, and Frishmans have an "identity of interests" with WBCH.

The Sweeneys have alleged that the defendants are officers and shareholders of WBCH.[104]  Specifically, the Sweeneys allege that each defendant holds one-third ownership of WBCH.[105]  The defendants do not dispute this claim, and the Memorandum the Sweeneys received on January 30, 2007, supports it.[106]  According to the Memorandum, Paul Darricarrere holds the titles of "President" and "Director;" Abe Frishman holds the titles "Executive Vice President Marketing and Sales," "Secretary," and "Director;"  Raymund Schwartz holds the titles "Chief Operating Officer," "Executive

---

[101]*Davis*, 885 F.2d at 520*; see also Parks v. Macro-Dynamics, Inc.*, 121 Ariz. 517, 521 (Ct. App. 1979).

[102]*Davis*, 885 F.2d at 521 (internal citation omitted).

[103]*Id.* at 522.

[104]Docket 1 ¶¶ 3, 5, 7.

[105]*Id.* ¶¶ 17, 18.

[106]Docket 17, Exhibit 2 at 31.

Vice President," "Treasurer," and "Director."[107]  Based on these facts, the Court concludes that there is an "identity of interests" between WBCH and the defendants. Due to this identity of interests, defendants are not protected by the fiduciary shield doctrine to the extent that it retains vitality under Arizona law, and their association with WBCH does not prevent the court from exercising personal jurisdiction.

## D. Failure to State a Claim with Sufficient Particularity: Claims Two and Five

The Sweeneys argue that statements made by the defendants with respect to the Sweeneys' investment in WBCH constitute fraud and negligent misrepresentation.  The Sweeneys have set forth these allegations in claims two and five, respectively.  All defendants argue that claims two and five have not been pled with sufficient particularity, and move to dismiss on that ground.

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), allegations of fraud and mistake must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[108]  Both fraud and negligent misrepresentation must meet the heightened pleading standard of Rule 9(b).[109]  The allegations must be "specific enough to give defendants notice of the

---

[107]*Id.*, Exhibit 2 at 28 - 29.

[108]Fed. R. Civ. P. 9(b).

[109]Although the Ninth Circuit has suggested that negligent misrepresentation may be a non-fraudulent averment, *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("The only consequence of a holding that Rule 9(b) is violated with respect to a § 11 claim would be that any allegations of fraud would be *stripped from the claim.*  The allegations of innocent or negligent misrepresentation, which are at the heart of a § 11 claim, would survive.") (emphasis in original) (quoting *Carlon v. Thaman (In re NationsMart Corp. Sec. Litig.)*, 130 F.3d 309, 315 (8th Cir. 1997)), "[m]ost district courts within the Ninth Circuit have held that a

particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."[110] "This notice requirement is satisfied by allegations of the 'time, place, and nature of the alleged fraudulent activities,'"[111] but "mere conclusory allegations of fraud are insufficient."[112] A plaintiff "must set forth what is false or misleading about a statement, and why it is false."[113] Furthermore, "the statement or omission must be shown to have been false or misleading *when made*."[114] However, Rule 9(b) does not "require any particularity in connection with an averment of intent, knowledge or condition of the mind;" these may be alleged generally.[115] Rule 9(b) does not permit a plaintiff to "lump multiple defendants together," but requires him to differentiate his allegations sufficiently

---

negligent misrepresentation claim is subject to the heightened pleading requirements of Rule 9(b)." *Hendrickson v. Popular Mortg. Servicing, Inc.*, 2009 WL 1455491, at *4 (N.D. Cal., May 21, 2009); *see also Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.").

[110]*Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[111]*Fecht v. Price*, 70 F.3d 1078, 1082 (9th Cir. 1995) (quoting *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973)).

[112]*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

[113]*In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superceded by statute on other grounds).

[114]*In re Stac Electronics. Secs. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996) (emphasis in original); *In re GlenFed*, 42 F.3d at 1548-49.

[115]*Walling*, 476 F.2d at 397; Fed. R. Civ. P. 9(b). Although the defendants do not specifically argue that the Sweeneys' claims are governed by the Private Securities Litigation Reform Act of 1995 (PSLRA), many of their authorities are. The PSLRA heightens the pleading standards of securities cases by requiring particularity in pleading scienter. However, only actions under Title 15, Chapter 2B of the United States Code are governed by the PSLRA. *See Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir. 2002). Therefore, the court will apply the pleading standards of Fed. R. Civ. P. 9(b).

to put each defendant on notice.[116]  Although allegations of specific fraudulent statements by each individual defendant are not strictly necessary, "a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'"[117]

Moreover, under Arizona law, a claim for fraud requires proof of the following elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury.[118]  "Although no particular language is necessary in pleading fraud, the elements constituting fraud must be found when considering the pleading as a whole."[119]  "Actionable fraud cannot be predicated on unfulfilled promises, expressions of intention or statements concerning future events, unless such were made with the present intent not to perform."[120]  A claim for negligent misrepresentation is based on the Restatement (Second) of Torts, which states, in relevant part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss

---

[116] *Swartz v. KPMG L.L.P.*, 476 F.3d 756, 764-65 (9th Cir. 2007).

[117] *Id.* (quoting *Moore*, 885 F.2d at 541, internal brackets omitted).

[118] *Leizerman v. Wick*, 2009 WL 325434, at *2 ¶ 6 (Ariz. App., Feb. 10, 2009); *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500 (1982).

[119] *Spudnuts, Inc. v. Lane*, 131 Ariz. 424, 426 (Ct. App. 1982).

[120] *Hall v. Romero*, 141 Ariz. 120, 123 (Ct. App. 1984).

caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[121]

The Sweeneys do not specify which statements by the various defendants they allege to be fraudulent or negligent misrepresentations; instead they simply "reallege each and every allegation set forth" in the general Complaint.[122]  For example, the Sweeneys allege that Abe Frishman "indicated that major beer or bottling companies were in the process of testing the Product."[123]  In *GlenFed*, the plaintiffs alleged that the defendants made misleading statements, and contrasted these statements with GledFed's strategic plan, which contradicted them.[124]  The *GlenFed* court ruled that the plaintiffs met the requirements of Rule 9(b) by showing the contradiction between the contemporaneous statements and the strategic plan.[125]  In the present case, however, the Sweeneys have not explained how or why WBCH's strategic plan was false at the time Frishman touted the company's plans.  Furthermore, there is nothing in the record to indicate that this statement is fraudulent or constitutes a misrepresentation.

Other alleged statements suffer the same inadequacy.  For example, the Complaint alleges that, during Abe Frishman's visit in July of 2006, he outlined the financial and marketing plan of WBCH.  As above, the Sweeneys have not explained why these statements are misrepresentations, and have pointed to nothing in the record

---

[121]Restatement (Second) of Torts § 552 (1977); *Leizerman*, 2009 WL 325434, at *2 ¶ 6.

[122]Docket 1 ¶¶ 57, 76.

[123]*Id.* ¶ 16.

[124]*In re GlenFed*, 42 F.3d at 1550.

[125]*Id.*

that contradicts them. Similarly, the Sweeneys allege they received financial and sales information from WBCH on January 23, 2008. However, they do not specifically allege that the information was false or fraudulent, and point to no contradictory evidence from the record.

Bart Sweeney also alleges that the Frishmans offered him $5,000 in cash or equivalent stock for each additional investor he recruited, including his wife.[126] He further alleges that he has not received this cash or stock, despite recruiting his wife.[127] Although these allegations are somewhat particular, the Sweeneys have not explained why the original statement constituted fraud or negligent representation at the time it was made. Indeed, there is no indication as to when the $5,000 was to be paid, or whether it was dependent upon outside factors, such as WBCH showing a profit. Therefore, this claim fails to meet the particularity requirements of Rule 9(b) as well.

It is worth noting that the Sweeneys' first claim alleges that their assets have been "wasted" and "squandered" by the various defendants and suggests that discovery is needed with respect to WBCH's corporate documents to prove their claims.[128] The plaintiffs in *Yourish v. California Amplifier* also suggested the existence of "confidential non-public information" to establish the falsity of defendants' statements.[129] The court rejected this argument, stating that it was necessary to plead "the existence of the 'confidential non-public information' with the requisite particularity [sufficient to satisfy

---

[126]Docket 1 ¶ 26.

[127]*Id.* ¶¶ 27 - 28.

[128]Docket 1 ¶¶ 47 - 56.

[129]191 F.3d 983, 993 (9th Cir. 1999).

Rule 9(b)]."[130]  In that case, the court noted that the plaintiffs did not allege any particulars, such as  "what medium contained the information (e.g., internal reports); when the information was made available to people inside the company; which of the Defendants the information would have been available to; or when they were aware of the information."[131]  Here, the Sweeneys have not alleged any particulars regarding the existence of documents that would contradict any of the defendants' statements.

In sum, the Sweeneys have not pled claims two and five with sufficient particularity pursuant to Rule 9(b).  The court will therefore grant the defendants' motions to dismiss claims two and five.

## V.  CONCLUSION

For the reasons set forth above, **IT IS ORDERED**:

(1) Defendants Darricarreres', Schwartzes', and WBCH's motion to dismiss at docket 18 is **GRANTED** for failure to plead with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b), and claims two and five of plaintiffs' Complaint are **DISMISSED** against defendants Darricarreres, Schwartzes, and WBCH without prejudice to potential amendment.

(2) Defendants Darricarreres', Schwartzes', WBCH's, and M&W's motion to dismiss at docket 19 is **GRANTED** in part and **DENIED** in part, as follows:

---

[130]*Id.* at 994.

[131]*Id.*

-33-

(a) The motion is **GRANTED** as to claims six and seven. Claims six and seven against defendants Darricarreres, Schwartzes, WBCH, and M&W are **DISMISSED** as time-barred.

(b) The motion at docket 19 is **DENIED** as to claims three and four against defendants Darricarreres, Schwartzes, WBCH, and M&W.

(c) The motion at docket 19 is **DENIED** as moot as to claim five.

(3) Defendants Darricarreres' and Schwartzes' motion to dismiss at docket 20 is **DENIED**.

(4) Defendants Frishmans', Darricarreres', Schwartzes', and WBCH's motion to dismiss at docket 21 is **GRANTED** in part and **DENIED** in part, as follows:

(a) The motion at docket 21 is **GRANTED** for failure to plead with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b), and claims two and five of plaintiffs' Complaint are **DISMISSED** against defendants Frishmans without prejudice to potential amendment.

(b) The motion at docket 21 is **GRANTED** insofar as it seeks to dismiss claims six and seven as time-barred pursuant to Federal Rule of Civil Procedure 12(b)(6). Claims six and seven of plaintiffs' Complaint are **DISMISSED** against defendants Frishmans.

(c) The motion at docket 21 is **DENIED** in all other respects.

(5) Defendant M&W's motion to dismiss claims two and five at docket 23 is **GRANTED** for failure to plead with sufficient particularity. Claims two and five of

plaintiffs' Complaint are **DISMISSED** against defendants M&W without prejudice to potential amendment.

(6) Defendants Darricarreres', Schwartzes', and WBCH's motion to dismiss claims two and five at docket 23 is **DENIED** as moot.

(7) The claims pled in the existing Complaint which remain for resolution are claim one against defendant WBCH and claims three and four against all defendants.

(8) Any motion to amend the complaint to overcome the Sweeneys' failure to comply with the pleading requirements of Rule 9(b) with respect to claims two and five must be filed no later than **August 10, 2009**.

DATED at Anchorage, Alaska, this 14th day of July 2009

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE